**SUBURBAN SALES & SERVICE, INC., Clair L. Young, Shirley C. Young, Lloyd H. Young, and Catherine P. Young, Petitioners,**

v.

**DISTRICT COURT OF RAMSEY COUNTY, North Dakota; the Honorable Larry M. Hatch, District Judge; and John R. White and Louise M. White; Respondents.**

Civ. No. 9741.

Supreme Court of North Dakota.

March 13, 1980.

Robert Vaaler, of Vaaler, Gillig, Warcup, Woutat, Zimney & Foster, Grand Forks, and John T. Traynor, of Traynor & Rutten, Devils Lake, for petitioners; argued by Mr. Vaaler.

Seth R. Phillips, St. Paul, Minn., and John W. Frith, Devils Lake, for respondents White; argued by Mr. Phillips.

VANDE WALLE, Justice.

The Youngs petitioned this court for a writ of superintending control over the district court of Ramsey County ("district court") or for other appropriate relief. We decline to exercise our superintending control over the district court.

On October 13, 1972, a judgment was issued, entered, and docketed in the district court of Ramsey County on a cross-claim in favor of the Youngs and against one of the respondents herein, John R. White. Both the Youngs and White had been named as defendants in an action brought by the Ramsey National Bank of Devils Lake. The Youngs had served an amended answer and cross-claim on White on the 28th of August, 1972. White failed to answer the cross-claim, and the district court entered a default judgment against him in the amount of $37,500 in favor of Suburban

Sales & Service; $12,600 in favor of Clair L. Young, Jr.; $3,600 in favor of Shirley R. Young; and $39,750 in favor of Clair L. Young, Jr., and Lloyd H. Young, individually and as a copartnership known as Young's Auto Parts.

On March 14, 1977, the Ramsey County sheriff levied on the judgment and against the real estate of White; a notice of sale was published for a sheriff's sale to commence on April 12, 1977. White filed a declaration of homestead with respect to his property and the lien of the judgments on that property on March 22, 1977. The validity of that claim of exemption was denied by the Ramsey County district court on April 12, 1977, and a rehearing was denied on September 20, 1977. An appeal was taken, and in an opinion dated June 28, 1978, this court held that the appeal was not timely and proper. The court also observed that while it was not necessary to rule on the homestead exemption, the reasoning of the trial court denying the exemption was persuasive. See *Young v. White*, 267 N.W.2d 799 (N.D.1978).

Subsequent to this court's decision in *Young v. White, supra*, on August 18, 1978, White filed a motion under Rule 60(b)(6), N.D.R.Civ.P.,[1] to vacate the judgment dated and entered on October 13, 1972, in favor of the petitioners and against White. The initial hearing on the Rule 60(b) motion was held on November 9, 1978, before Judge Larry M. Hatch, assigned by this court to hear the motion. At that time the district court entered an order permitting White to take depositions in support of his motion for the court to consider along with the remainder of the record. On July 21, 1979, the district court granted White's motion to vacate the judgment entered on October 13, 1972. The Youngs requested a rehearing, which was granted by the district court and held on September 6, 1979. The district court on November 21, 1979, again granted White's motion to vacate the judgment dated October 13, 1972, but held the judgment

in the main action brought by Ramsey National Bank against the Youngs and White would not be set aside. The district court further ordered that White's property could not be conveyed or encumbered pending further proceedings. The district court's order was entered on December 19, 1979, and Suburban Sales petitioned this court on January 18, 1980, for a superintending writ.

The Youngs have set forth several grounds upon which they request this court to exercise its superintending authority by compelling the district court to reverse its order of December 19, 1979, and directing the dismissal of White's Rule 60(b) motion. However, before considering the merits of the Youngs' petition, we first consider the jurisdiction of this court to exercise its superintending authority in this instance. We find this issue to be conclusive.

The Youngs correctly point out that the superintending authority of this court over the district court is found in Section 86 of the North Dakota Constitution:

"The supreme court shall be the highest court of the state. It shall have appellate jurisdiction, and shall also have original jurisdiction with authority to issue, hear, and determine such original and remedial writs as may be necessary to properly exercise its jurisdiction. The supreme court shall consist of five justices, one of whom shall be designated chief justice in the manner provided by law."

Further, Section 27-02-04, N.D.C.C., provides:

"The supreme court may exercise appellate jurisdiction only, except when otherwise specially provided by law or by the constitution. Such court, in the exercise of its original jurisdiction, may issue writs of habeas corpus, mandamus, quo warranto, certiorari, and injunction. In the exercise of its appellate jurisdiction, and in its superintending control over in-

---

1. Rule 60(b), N.D.R.Civ.P., provides, in part:
   "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order in any

action or proceeding for the following reasons: . . . or (6) any other reason justifying relief from the operation of the judgment."

ferior courts, it may issue such original and remedial writs as are necessary to the proper exercise of such jurisdiction. Such court shall exercise its original jurisdiction only in habeas corpus cases and in such cases of strictly public concern as involve questions affecting the sovereign rights of this state or its franchises or privileges."

█ As the Youngs have recognized, this court has expressed on several occasions the principle that its superintending control over inferior courts will be used sparingly and only when an emergency exists and there are no other adequate means of correcting the claimed error. *Gill v. Gill*, 211 N.W.2d 374 (N.D.1973). In *Marmon v. Hodny*, 287 N.W.2d 470, 474 (N.D.1980), we stated:

"In *Burlington Northern v. North Dakota District Court*, 264 N.W.2d 453 (N.D. 1978), we observed that our Court on numerous occasions stated that its power to issue original writs, even upon a proper showing, is discretionary and that its power cannot be invoked as a matter of right but will be employed to prevent possible injustice and that from this it necessarily follows that the court itself, on a case-by-case basis, will determine whether or not it should exercise its original jurisdiction."

*Marmon*, as did *Burlington Northern*, involved a petition to this court to exercise its superintending authority to prevent the answering of interrogatories ordered to be answered by the district court. In both cases this court noted that the order requiring answers to the interrogatories was not an appealable order. However, we also determined that once the interrogatories were answered, a subsequent review of that order on appeal of the judgment could not undo what had been done by the district court order requiring answers to the interrogatories. We exercised our superintending authority and directed the district court to vacate its order compelling answers to certain interrogatories.

In *Ingalls v. Bakken*, 167 N.W.2d 516 (N.D.1969), this court stated with regard to its superintending control:

"Such control will not be exercised by the Supreme Court in any case where the applicant has an adequate remedy by appeal. *State ex rel. Lemke v. District Court, etc.*, 49 N.D. 27, 186 N.W. 381 (1921). An exception is made in a case where the delay in appealing would cause irrevocable injury and where the facts of the case require emergency relief. *State ex rel. Red River Brick Corp. v. District Court, etc.*, 24 N.D. 28, 138 N.W. 988 (1912)." 167 N.W.2d at 518.

█ It is conceded by all the parties that an order vacating a default judgment is not, by itself, appealable. In *Trautman v. Keystone Development Corporation*, 156 N.W.2d 817 (N.D.1968), this court had under consideration an appeal from an order of the district court vacating a default judgment. The court held that an order granting a motion to vacate the judgment is purely interlocutory and is not an appealable order, and stated:

"An order is appealable only when it comes within the provisions of N.D.C.C. § 28–27–02. We have reviewed that section carefully and find in it no basis for Mr. Trautman's appeal from the order granting the defendant's motion to vacate the judgment. The order is not decisive of the question involved, nor does it prejudice Mr. Trautman's right to raise the question at a subsequent stage of the proceedings." 156 N.W.2d at 818–819.

See also *William Clairmont, Inc. v. Burlington Northern, Inc.*, 229 N.W.2d 77 (N.D. 1975).

Section 28–27–02, N.D.C.C., has not been amended since the decisions in *Trautman* and *Clairmont* were issued.

Although the order of the district court to vacate a judgment may be interlocutory and not appealable as such, it does not follow that the order may not be *reviewable* upon an appeal from the judgment entered after trial of the action. Thus, in *Ingalls v. Bakken, supra*, this court considered a petition for exercise of its superintending authority over a district court which had entered an order holding that the defendant

had made a timely appearance and granting him the right to serve his answer on the plaintiff within ten days. In refusing to exercise superintending control this court stated:

"Without deciding this issue, we would point out that the trial court, by permitting the defendant to serve an answer, has not in any way denied justice to the plaintiff. All the trial court has done is to give both parties an opportunity to be heard upon the merits. The question of whether, under the facts of this particular case, the trial court abused its discretion in refusing to enter a default judgment and permitting the defendant to answer, can be raised on appeal from any judgment that is entered in the action. In *Braseth v. Bottineau County*, 13 N.D. 344, 100 N.W. 1082 (1904), this court had before it the question of whether the trial court had abused its discretion in vacating a default judgment that had been entered, where the default was the failure of the defendant to answer within the statutory period. In that case, this court held that vacating such default judgment was within the sound judicial discretion of the trial court.

"Having held that the question of whether vacating a default judgment was within the sound judicial discretion of the trial court could be raised on a proper appeal from the judgment as finally entered, we believe that the question of whether the trial court abused its discretion by refusing to order a default judgment can also be raised by appeal from the judgment in that action.

"Courts favor the trial of cases upon their merits. And, since the issue of whether the trial court abused its discretion in refusing to enter a default judgment and in permitting the defendant to file his answer under the circumstances in that case can be raised on proper appeal,

we find that the plaintiff has not been denied justice. Therefore, this court will not exercise its superintending control in behalf of the plaintiff. There has been no showing that the action of the trial court was tantamount to a denial of justice." 167 N.W.2d at 519.

Although *Ingalls*, *Trautman*, and *Clairmont* are dispositive of the issue that an order vacating a default judgment may be reviewed on an appeal from the final judgment, and that an adequate remedy by appeal from the final judgment does exist, the Youngs argue that such remedy is not adequate at law. In support of their position they point out that if, upon retrial, White is successful, an appeal from the entry of that judgment to this court will present only the question of whether or not there is evidence to support the decision and the appeal will not reach the issue the Youngs seek to reach in this proceeding, i. e., whether or not the district court abused its discretion in vacating the default judgment. That argument by the Youngs is contrary to the legal principles announced in *Ingalls*, *Trautman*, and *Clairmont*.[2]

■ The Youngs do have an adequate remedy at law because the order of the trial court vacating the default judgment may be reviewed on appeal from a judgment on the merits. We find no irrevocable injury which would be caused by a trial on the merits. Thus we conclude we should not exercise our superintending control.

However, in view of the fact that both parties have briefed and argued the issues on the merits as well as on the question of this court's jurisdiction to exercise its superintending control, we will consider the merits in the interest of judicial economy and in order to avoid a repetition of these arguments should there be an appeal from a judgment on the merits.

2. Counsel for the Youngs candidly admitted in oral argument that he based his statement on the supposition that if White is successful on the trial of the merits, this court, on a subsequent appeal from the judgment, would be more concerned with the merits of the judgment than the question of whether or not the trial court abused its discretion in vacating the default judgment. He states this supposition is supported by the fact that courts favor trial of cases on the merits.

The Youngs argue they have found no case in which a default judgment more than seven years old was vacated on a Rule 60(b) motion, and refer us to *United Accounts, Incorporated v. Lantz*, 145 N.W.2d 488 (N.D.1966), as the decision in this jurisdiction in which the oldest default judgment was vacated. In that case this court affirmed a district court order vacating a default judgment some 6½ years old.[3] The Youngs distinguish that decision because the record in that case revealed the defendant did not know the judgment had been entered against him and there had been an attempt to serve and file an answer setting forth a meritorious defense but it had been returned by the court because the action had not been filed. Although the facts in *United Accounts* are different from those of the instant case, the opinion of the court with respect to the interpretation of Rule 60(b)(6) is significant:

"What constitutes a reasonable time varies from case to case and must be determined in each instance from the facts before the court. The very nature of the exercise of discretionary power in cases of this kind is such as to prevent any absolute rule from being laid down. [Citations omitted.]

"We held in *Sioux Falls Construction Company v. Dakota Flooring, a corporation* N.D., 109 N.W.2d 244, that Rule 60 is remedial in nature and should be liberally construed and applied. We said that this Court views with favor the trial of cases on their merits, and where default has been entered it is largely within the discretion of the trial court to say whether the defendant shall be permitted to come in afterward and make his defense, and that unless an abuse of discretion be made to appear, this court will not interfere." 145 N.W.2d at 493.

The Youngs also refer us to the decision in *Hefty v. Aldrich*, 220 N.W.2d 840 (N.D. 1974), in which this court discussed Rule 60(b)(6), and stated:

"But the use of the rule is limited by many considerations. It is not to be used as a substitute for appeal. *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950). It is not to be used to relieve a party from free, calculated, and deliberate choices he has made. *In re Braun*, [147 N.W.2d 482 (N.D.)] *supra*. It is not to be used in cases where subdivisions (1) to (5) of Rule 60(b) might be employed—it and they are mutually exclusive. Wright & Miller, Federal Practice and Procedure, Sec. 2864. Yet 60(b)(6) can be used where the grounds for vacating a judgment or order are within any of subdivisions (1) to (5), but 'something more' [*Bros Incorporated v. W. E. Grace Manufacturing Co.*, 320 F.2d 594, 609 (CA5 1963)], or 'extraordinary' [*Ackermann v. United States, supra*], which justifies relief from the operation of the judgment must be present." 220 N.W.2d at 846.

In *Hefty* this court found that the district court did not abuse its discretion in refusing to vacate a judgment under Rule 60(b)(6). In reviewing the cases from this court which have considered this matter, we have found none in which the trial court was held to have abused its discretion in vacating a judgment. This court has, however, on several occasions held that the trial court abused its discretion in refusing to vacate a judgment under Rule 60(b). See, e. g., *Perdue v. Sherman*, 246 N.W.2d 491 (N.D.1976); *In re Estate of Jensen*, 162 N.W.2d 861 (N.D.1968); *In re Braun*, 145 N.W.2d 482 (N.D.1966); *Sioux Falls Construction Co. v. Dakota Flooring*, 109 N.W.2d 244 (N.D. 1961).

We have also recognized that trial courts should be more lenient in granting motions under Rule 60(b) to vacate default judgments than to vacate judgments from cases which have been tried on their merits. *Perdue v. Sherman, supra; City of Wahpeton v. Drake-Henne, Inc.*, 228 N.W.2d 324 (N.D. 1975).

---

**3.** In *United Accounts* an appeal from the order of the district court vacating the default judgment was taken directly to the Supreme Court. The decision does not discuss the issue of whether or not an order vacating a default judgment is an appealable order.

The transcripts of the two hearings before the trial court are not a part of the record before us. However, an examination of the specific factual background of this matter as reflected by the petition, the response to the petition, the briefs of the parties, and the trial court's memorandum opinions issued on July 21, 1979, and November 21, 1979, reveal, in addition to the facts already recited herein, that White acquired a one-third interest in Suburban Sales & Services, Inc. Clair and Lloyd Young owned the other two-thirds. White signed a note at the Ramsey National Bank of Devils Lake for $20,579.80 plus interest. The note had previously been signed by the Youngs. White assumed a proportionate share of the note obligation as part of the purchase price for his one-third interest. The Youngs owned Young's Auto Parts during this same period of time. Troubles arose between the Youngs and White—each party placed the fault on the other party for those troubles. In January 1972, a special meeting of the stockholders was called for the purpose of considering the cancellation of the shares of stock held in the corporation by White and to remove him as a director. White was ousted as a director and his shares of stock were cancelled. No monies were tendered to him. White had contacted an attorney, David Garcia, and was advised by him to attend the meeting. White contends he assumed he was relieved of any further obligation on the note to Ramsey National Bank and from any other liabilities of Suburban Sales in return for his relinquishing his shares of stock. Ramsey National Bank brought an action for collection of the note against the parties who signed it. White gave the summons and complaint to Garcia. A note of issue was filed and Garcia was listed as attorney for White. No answer nor any other legal instrument was filed by Garcia in White's behalf. The Youngs cross-claimed against White. Ramsey National Bank obtained judgment against Suburban Sales, White, and the Youngs. The judgment on the cross-claim was by default and without notice. The district court indicated that notice of entry of the default judgment was not served on White or Garcia, although Garcia was listed as White's attorney on the note of issue. Rule 55(a)(3), N.D.R.Civ.P., provides that if the party against whom judgment by default is sought has appeared in the action he or, if appearing by representative, his representative shall be served with written notice of the application for judgment at least eight days prior to the hearing on the application for default judgment. In *Perdue v. Sherman, supra,* this court held that a conversation between the defendant and the attorney for the plaintiff constituted an appearance, and that once an appearance had been entered by the defendant he was entitled to the eight days' notice of intention to enter judgment under Rule 55(a). The court, citing *United Accounts v. Lantz, supra,* further held that a judgment entered without compliance with Rule 55(a) is not void but is irregular. In *Perdue* a motion to reopen a default judgment was denied by the district court. Because this court held as a matter of law that there had been an appearance and thus notice of application for default judgment should have been given pursuant to Rule 55, N.D.R.Civ.P., the order denying the reopening of the default judgment was reversed primarily upon a question of law under Rule 55(a) rather than under Rule 60.

Here, however, the Youngs argue that although they gave no notice of default judgment, White subsequently became aware of the judgment and made a free, calculated, and deliberate choice not to move to reopen the judgment but rather to bring an appeal to the Supreme Court from the order denying his claim of a homestead exemption when an attempt to levy on the default judgment was made by the Youngs. They urge that White is bound by his choice to appeal that issue rather than moving to vacate the default judgment when he first became aware of it.

White alleges that he did not make a free and deliberate choice because during this time he was suffering from depression caused by an auto accident. The district court determined that testimony of Garcia and a doctor lent some credence to White's allegation.

The district court's opinion further reflects that it, too, was concerned with the passage of time since the entry of the default judgment and with the question of whether or not during that time, White had made a free, calculated, and deliberate choice in the matter by bringing an appeal to the Supreme Court.

The precise findings of the district court are contained in the July 21, 1979, memorandum opinion:

"The Court finds that White was in essence deprived of counsel in that the inaction of Garcia constitutes inexcusable neglect. He continued to rely on Garcia's advice in the matter as late as 1977. White is a layperson with but a high school education. The judgment against him is large and based in part on speculative damages. He has drafted a proposed answer to the cross-claims that appears to be meritorious on its face. He suffered from mental depression during the time the action was pending. He does not appear to have been offered a free, calculated and deliberate choice as to the options available to him in this case until August, 1978. The Court cannot say that he has failed to act diligently. He should have had his day in court.

"Taking all the facts and circumstances in this case into consideration, the Court is persuaded that the interests of justice require a trial of cross-claims on the merits." [4]

■ The Youngs, however, contend the trial court abused its discretion in vacating the default judgment because the judgment was seven years old. They argue that this is an unreasonable length of time in which to permit White to move to vacate the default judgment. We have already noted that what constitutes a reasonable time within which to bring the motion must be determined in each instance from the facts before the court, and the exercise of discretionary power prevents any absolute rule from being laid down. *United Accounts, Incorporated v. Lantz, supra.* In view of the district court's finding that White received inadequate assistance from counsel, and that White continued to rely on his counsel's advice as late as 1977, we cannot conclude that the time within which the motion to vacate was made is unreasonable.[5]

■ The Youngs' argument that the attempt to obtain a homestead exemption at the time execution on the default judgment was made and the appeal of the denial of that homestead exemption to this court was a tactic agreed to by White and his counsel, Garcia, and was a free, calculated, and deliberate choice made by him is answered by the district court's conclusion that White received inadequate advice and relied on his counsel until as late as 1977, which included the time of the appeal of the homestead issue to this court, and the further finding of the district court that White was not offered a free, calculated, and deliberate choice as to the options available to him until August 1978.[6]

---

4. In the memorandum opinion of November 21, 1979, issued following the rehearing requested by the Youngs, the district court held that there was no meritorious defense by White against the Ramsey National Bank's action and that White would have an opportunity to address his liability on the Bank's debt in his cross-claim against the Youngs. That decision has not been appealed.

5. Similar instances of Garcia's failure to adequately represent other clients during this same period of time have already been documented before this court. See *Matter of Garcia*, 243 N.W.2d 383 (N.D.1976).

6. Lest it be argued that the merits here at issue were before this court in *Young v. White*, 267

N.W.2d 799 (N.D.1978), in which the homestead exemption was involved, we note that decision concerned the timeliness of the appeal from the order of the district court denying the exemption. In *Gajewski v. Bratcher*, 240 N.W.2d 871 (N.D.1976), this court held that ". . . judgments on the merits of a dispute, once rendered by this Court on appeal, after becoming final, should be set aside under Rule 60(b) only in exceptional circumstances where the application of equitable principles demands that such an extraordinary remedy be used to prevent an injustice from occurring." 240 N.W.2d at 887. In *Young v. White, supra*, the court did discuss the homestead exemption but the opinion expressly stated it was not necessary because of the conclusion that the appeal was not timely and proper. Even if the court

The Youngs contend they should not be punished because of the neglect of White's counsel. That position is not without merit. However, accepting the findings of the trial court, we believe the trouble and inconvenience caused the Youngs by a trial on the merits is not tantamount to a denial of justice and is outweighed by the policy favoring trial of cases on their merits.

The Youngs also contend that White has not shown a meritorious defense.[7] Without elaborating in detail the defenses raised in the proposed answer, we deem the allegation of estoppel and release to raise a meritorious defense. Additionally, we note that the district court determined the default judgment was large and based in part on speculative damages; that Young's Auto Parts, Inc., sought to recover although it was not named as a party in any of the proceedings; and that recovery by Young's Auto Parts may be a duplication of damages because Clair Young and Lloyd Young each sought damages in their own right and through the corporation. These factors all indicate defenses which we believe to be meritorious.

Finally, the Youngs raise the issue of whether or not the cross-claim by White against Suburban Sales and the Youngs contained in the proposed answer should be allowed. We find nothing in the record to substantiate the filing of a cross-claim by White against the cross-claimed defendants. It is not clear to us whether or not the district court intended to permit White's cross-claim to be filed. In the event that was the intent of the district court's order, we direct that White be permitted to answer the cross-claim of Suburban Sales but that White not be permitted to cross-claim against Suburban Sales and the Youngs.

We affirm the order of the district court vacating the default judgment against White and remand this case to the district court for further proceedings consistent with this opinion.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.

---

had based its decision on the homestead exemption rather than the timeliness of the appeal, the decision would not have involved the merits of this dispute. In any event, that appeal, rather than indicating a free and deliberate choice on the part of White, is further evidence of the neglect of White's counsel in this entire matter.

7. The showing of a meritorious defense is one of the elements necessary for the trial court to grant a Rule 60(b) motion. See, e. g., *Perdue v. Sherman, supra.*